IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

| | |
|---|---|
| FAMILY MEDICINE PHARMACY LLC, | ) ) ) |
| Plaintiff, | ) ) ) Civil Action No.: 1:17-CV-00053 |
| v. | ) ) |
| IMPAX LABORATORIES, INC., a California corporation, | ) ) ) ) |
| Defendant. | ) |

**DEFENDANT IMPAX LABORATORIES, INC.'S
MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

Defendant Impax Laboratories, Inc. ("Impax") moves to dismiss the Complaint (Doc. 1) filed by Plaintiff Family Medicine Pharmacy LLC ("Plaintiff" or "Family Medicine") under Federal Rule of Civil Procedure 12(b)(6) and S.D. Ala. Local Rule 7(b) because Plaintiff's allegations fail to state a claim upon which relief may be granted. Impax also moves to dismiss or strike Plaintiff's class allegations under Federal Rule of Civil Procedure 23.

Family Medicine, a pharmacy in Clarke County, Alabama, alleges that Impax violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by faxing it a medical announcement in December 2016 about a low-cost epinephrine auto-injector ("EAI") that Impax made available to patients as an alternative to the EpiPen (an epinephrine auto-injector manufactured by Mylan Inc.). This is not the first foray into plaintiff-side TCPA litigation for serial litigant Family Medicine—according to a review

of records available on Pacer, it is the *tenth* purported TCPA class action Family Medicine has filed since 2015, all in this District.[1] Family Medicine's claim against Impax fails as a matter of law, and its class allegations should be stricken.

*First*, Plaintiff does not have a legally viable claim under the TCPA. The TCPA only prohibits the transmission of faxes that are both "unsolicited" and "advertisements." The face of the fax Impax allegedly sent Plaintiff demonstrates that it is not an "advertisement" because it does not promote the sale of commercial goods or services to Family Medicine. Instead, the fax is an "informational" communication about a low-cost, potentially lifesaving medical product that Family Medicine's pharmacists may have needed to discuss with patients who could benefit from an affordable alternative to EpiPen. "Informational" communications like this one do not violate the TCPA. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 and Junk Fax Prevention Act of 2005*, 21 FCC Rcd. 3787, 3814–15 (2006) (defining "informational" messages).

*Second*, this Court should dismiss or strike Plaintiff's class allegations under Rule 23. Plaintiff is not a member of the proposed class and therefore has no standing to

---

[1] *See Family Medicine Pharmacy, LLC v. Advanced Rx, Inc.*, No. 1:15-CV-194 (Apr. 7, 2015); *Family Medicine Pharmacy, LLC v. Primed Pharmaceuticals, LLC*, No. 1:15-CV-188 (Apr. 7, 2015); *Family Medicine Pharmacy, LLC v. Stewart Marketing And Associates, Inc.*, No. 1:15-CV-193 (Apr. 10, 2015); *Family Medicine Pharmacy, LLC v. Sheralven Enterprises, Ltd.*, No. 1:15-CV-194 (Apr. 10, 2015); *Family Medicine Pharmacy LLC v. Owen Mumford USA, Inc.*, No. 1:15-CV-290 (June 2, 2015); *Family Medicine Pharmacy, LLC v. Global, LLC*, No. 1:15-CV-564 (Nov. 3, 2015); *Family Medicine Pharmacy, LLC v. Perfumania Holdings, Inc.*, No. 15-CV-563 (Nov. 3, 2015); *Family Medicine Pharmacy, LLC v. Trxade Group Inc. et al*, No. 1:15-CV-590 (Nov. 18, 2015); *Family Medicine Pharmacy LLC v. Gulf Coast Pharmaceuticals Plus, LLC,* No. 1:15-CV-615 (Dec. 2, 2015).

bring its class claim. Additionally, Plaintiff has alleged an impermissible "fail-safe" class that simply tracks the language of the TCPA and defines class membership by success on the merits of individual claims, rather than reference to objective criteria.

For these reasons, as explained further below, this Court should dismiss Plaintiff's Complaint with prejudice.

## BACKGROUND

### I. IMPAX AND ITS EAI

Impax is a manufacturer of pharmaceutical products. Compl. ¶¶ 2–3. One of Impax's products is an EAI that can be used for the emergency treatment of life-threatening allergic reactions, including anaphylaxis. *See* Compl. Ex. A. This EAI contains the same active medicine as EpiPen, but it is available to patients at a considerably lower cost. *See id.* As has been widely noted in the media, particularly in late 2016, EpiPen's rising price has significantly affected its availability to patients who require emergency treatment for allergic reactions. *See, e.g.*, Las Vegas Review Journal, *Drug Wars*, Sept. 2, 2016, at 1, 2016 WLNR 26735201 ("The cost of the EpiPen has skyrocketed over the past eight years, from about $100 for a two-pack in 2008 to $500 or more now"), Cheyenne Derksen Schroeder, McPherson Sentinel, *Expensive Meds Raise Risks in Emergency,* Sept. 10, 2016, at 1, 2016 WLNR 28058806 (discussing "the rising price of Mylan's EpiPen" and stating that the "15 million people with severe allergies worldwide still worry about their safety in an emergency, and the population is on the

rise"). Impax's EAI is an affordable and potentially lifesaving alternative medication for patients who cannot afford EpiPen. *See* Compl. Ex. A.[2]

To obtain the EAI in Alabama, a patient would have to get a prescription for the EAI from his physician: a pharmacist cannot substitute the Impax EAI for the Mylan EpiPen. *See id*. While Impax does not sell the EAI to pharmacies like Plaintiff, patients rely on pharmacists to act as learned intermediaries and to provide them with safety and usage information about Impax's medication. *See* Exhibit A at 2.

## II. THE FAX IMPAX ALLEGEDLY SENT TO FAMILY MEDICINE

Plaintiff alleges that on December 21, 2016, Impax sent it a single, two-page fax announcement with usage, safety, and regulatory information for the Impax EAI. *See* Compl. ¶ 16 *and* Exhibit A. The first page of the fax describes the EAI, including its regulatory status, active ingredient, and cost. *See* Compl. Ex. A. The second page includes detailed prescribing and usage information as approved by the FDA. *See* Exhibit A at 2. The fax does not provide Plaintiff with any way to purchase the EAI directly from Impax. *See generally id*. Instead, it notes that pharmacists may contact Impax "[f]or full prescribing information and video instructions on the use of the epinephrine injection." *See id.* at 2.

---

[2] Plaintiff attached the first page of the fax it allegedly received as Exhibit A to the Complaint, but it omitted the second page of the fax. *Compare* Compl. Ex. A (noting that the first page is "1/2") *with* Exhibit A (the original fax). The Court may consider the complete fax in deciding this motion because it is referenced in and integral to Plaintiff's allegations. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) ("In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."); *see also Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 405 n.7 (S.D.N.Y. 2010) (court would consider full user agreement on motion to dismiss where agreement was excerpted, referenced, and relied on in the complaint).

4

Plaintiff does not allege that it has ever received any other faxes from Impax. *See generally* Compl. Nor does Plaintiff allege that the one fax it allegedly received offered a product for sale to Plaintiff. *Id.* Indeed, because Family Medicine is an Alabama pharmacy and not a patient, it would not be the customer for the EAI. *See* Exhibit A at 2. Nonetheless, on January 30, 2017, Plaintiff filed this lawsuit behalf of itself and a purported nationwide class of persons who "from 2013 to the present, received one or more unsolicited advertisements via facsimile from Defendant." *Id*. ¶ 19. For the reasons set forth below, Plaintiff's claims are without merit and should be dismissed with prejudice.

## **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state "'a claim to relief that is plausible on its face,'" meaning the allegations must consist of more than "'labels and conclusions,' . . . 'a formulaic recitation of the elements of a cause of action,' . . . or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 557 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). While factual matter must be accepted as true, the Court does not "have to accept as true legal conclusions even when 'couched as [] factual allegation[s]' or 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Rose v. SMI*

*Steel LLC*, 18 F. Supp. 3d 1317, 1320 (N.D. Ala. 2014) (alterations in original) (quoting *Iqbal*, 556 U.S. at 678).

Plaintiff also bears the burden of demonstrating that class certification is appropriate under Federal Rule of Civil Procedure 23. *Rutstein v. Avis Rent–A–Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000). Because Impax contends that Plaintiff's bid for class certification fails as a matter of law, however, Impax has "the burden of demonstrating from the face of plaintiffs' complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." *See Romano v. Motorola, Inc.*, No. 07-CIV-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007).

## ARGUMENT

### I. PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF.

Plaintiff fails to allege a "plausible entitlement to relief" under the TCPA for two separate reasons. *First*, the Impax announcement is not an "unsolicited advertisement." *Second*, the fax falls under the "informational communication" exception to the TCPA.

**A. The Announcement Is Not an Advertisement.**

Plaintiff's TCPA claim fails because the medical announcement it alleges Impax faxed it is not an "advertisement" and therefore not actionable under the TCPA.

The TCPA does not regulate all faxed communications; it only prohibits unsolicited "advertisements." *See* 47 U.S.C. § 227(b)(1)(C); *see also Phillips Randolph Enters., LLC v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851, 852 (N.D. Ill. 2007) ("Congress' primary purpose in enacting the TCPA was to prevent the

6

shifting of advertising costs to recipients of unsolicited fax advertisements, and therefore [it] does not apply to other forms of communication transmitted by fax."); *Omerza v. Bryant & Stratton*, 2007-Ohio-5215, ¶¶ 30–31 ("[T]he Act was designed to ban junk faxes, not to encourage a cottage industry to encourage overly zealous litigants or their attorneys from profiting from the unintended consequence of the Act.").

Under the TCPA, an "advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services[.]" 47 U.S.C. § 227(a)(4). Consistent with this definition, the Federal Communications Commission ("FCC"), the agency responsible for issuing regulations interpreting and implementing the TCPA (47 U.S.C. § 151), has clarified that faxes are only subject to the TCPA if their "*primary* purpose" is to "promote a commercial product or service[.]" *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 and Junk Fax Prevention Act of 2005*, CG Docket Nos. 02–0278 and 0–338, Final Rule, FCC06–42, 71 Fed. Reg. 25967–01, 25974 (May 3, 2006) ("FCC Order") (emphasis added). In other words, *de minimis* or "incidental" advertising in a fax "does not convert the entire communication into an advertisement." *Id.* at 25973–74; *e.g.*, *Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.*, Civil Action No. 12–2132 (FLW), 2013 WL 486207, at *6 (D.N.J. Feb. 6, 2013) (concluding that advertisement was merely incidental to informational message of faxes). Likewise, any ancillary commercial benefit to the sender does not transform a fax into an "advertisement." *See Lutz Appellate Servs., Inc. v. Curry*, 859 F. Supp. 180, 181 (E.D. Pa. 1994) (concluding that the fact that a recipient might apply for the job offered did

not render the fax an advertisement).

The Impax announcement is not an "advertisement" as the term is used in the statute because it did not promote the commercial availability of the EAI to Plaintiff. *See* Compl. Ex. A. To the contrary, the purpose of the announcement was to alert Plaintiff to the availability of a lower-cost alternative to EpiPen that might be of interest to—or *critical to*—its patients in and around Clarke County. Plaintiff is a pharmacy, not a patient who might purchase the EAI or a physician who might prescribe it. Consequently, nowhere does the announcement include pricing information for the EAI or even contact information for Impax. Instead, it plainly states that patients in Alabama may only obtain an EAI by obtaining a prescription from a physician. *See* Compl. Ex. A. "[I]t is impossible for defendant to be advertising an *available* service, as required by 47 U.S.C. § 227(a)(5) . . . when that service is patently not available[.]" *Absolute Health Center, Inc. v. Multiplan, Inc.*, No. 15-cv-01624-RM-NYW, 2016 WL 7868822 (D. Colo. Sept. 23, 2016), at *6 (granting summary judgment in favor of defendant because faxes were not advertisements, even though they promoted commercial activity) (emphasis in original).

Numerous courts have determined in similar cases, at the pleading stage, that a fax is not an "advertisement" as a matter of law. *E.g.*, *Florence Endocrine Clinic, PLLC v. Arriva Medical, LLC*, No. 3:16-cv-1289-AKK, Dkt. 35 at 10 (N.D. Ala. Nov. 30, 2016) (granting motion to dismiss where faxes were not designed to promote Arriva medical products to recipient doctors) (attached as Exhibit B); *Ameriguard, Inc. v. Univ. of Kansas Med. Ctr. Research Inst., Inc.*, 222 F. App'x 530, 531 (8th Cir. 2007)

8

(affirming district court's dismissal where fax was not an "unsolicited advertisement" as defined by the TCPA); *ARcare v. IMS Health, Inc.*, No. 2:16-CV-00080 JLH, 2016 WL 4967810, at *1 (E.D. Ark. Sept. 15, 2016) (granting motion to dismiss because faxes were not "advertisements" as defined by the TCPA). In particular, another Alabama district court recently held that a medical supply company's faxes to doctors were not advertisements, even though the faxes included the company's logo and a detailed description of the company's products, like the fax at issue here. *See Florence Endocrine*, No. 3:16-cv-1289-AKK, Dkt. 35 at 10. In dismissing the plaintiff's TCPA claim, the court pointed out:

> "[T]here is nothing in the complaint to allege that [the defendant] intended the faxes to promote the products' commercial availability to [plaintiff] doctors. In fact, [plaintiff] alleges that [the defendant's] business model involves soliciting and aggressively cross-selling to *patients*, not to the clinic or its physicians."

*Id.* at 10–11 (emphasis in original).

The Complaint here fares no better. It does not allege that the fax Impax allegedly sent Family Medicine was intended to promote the EAI to Family Medicine, rather than to patients who could purchase it or even to doctors who could prescribe it. *See generally* Compl. Plaintiff, therefore, has failed to allege that the announcement was an advertisement under the TCPA.

**B. The EAI Announcement Is a Lawful "Informational" Communication.**

In addition and alternatively, Impax's fax announcement does not violate the TCPA because it was an "informational" communication. FCC Order at 25973; *see also Janssen Pharm., Inc.*, 2013 WL 486207, at *2 (noting that "the statute draws a line

9

between informational messages and advertisements").

The FCC has expressly recognized that newsletters, industry news articles, legislative updates, and employee benefit information all constitute "informational" faxes. FCC Order at 25973. Similarly, "[m]essages . . . [that] notify the recipient of a change in terms or features regarding an account, subscription, membership, loan or comparable ongoing relationship" are not prohibited by the TCPA. *Id.* at 25972. The notice Impax allegedly faxed to Plaintiff qualifies as a lawful "informational" communication because it was designed to provide important and timely medical information to pharmacies. *See id.* at 25973; *cf.*, *Sorrell v. IMS Health Inc.*, 131 S.Ct. 2653, 2662–64 (2011) (observing that "the creation and dissemination of information are speech within the meaning of the First Amendment" and that speech, particularly "in the fields of medicine and public health, where information can save lives," is protected by the First Amendment). The "primary purpose" of the fax was to inform pharmacies like Plaintiff of a timely, critical change that directly impacted the pharmacy's patients. *See* Compl. Ex. A.

Case law confirms that communications that provide timely, relevant information are outside the scope of the TCPA. For example, in *Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.*, No. 12–2132, 2013 WL 486207 (D.N.J. Feb. 6, 2013), the court granted the defendant's motion to dismiss after concluding that the faxes at issue—which advised that a drug had been reclassified for insurance coverage purposes and provided copayment information for UnitedHealthcare—were informational messages, not advertisements. *Id.* at *1, 5. Similarly, in *Holmes v. Back Doctors, Ltd.*,

695 F. Supp. 2d 843, 851 (S.D. Ill. 2010), the court reaffirmed its earlier ruling that faxes containing information about various medical disorders sent by a chiropractic firm to personal injury lawyers were not "advertisements" under the TCPA, even though they provided the defendant with some advertising benefit. *Id.* (noting that "it is not the case that the TCPA was intended to be a blanket prohibition of commercial speech"). And in *Phillip Long Dang, D.C., P.C. v. XLHealth Corp.*, Case No. 1:09-cv-1076, 2011 WL 553826 (N.D. Ga. Feb. 7, 2011), the court held that a fax inviting doctors to a seminar regarding the defendant insurance company's billing practices, to learn how to submit claims and speed up the reimbursement process, was "informational" and not an "advertisement." *Id.* at *4.

The primary purpose of the announcement fax at issue in this case was to provide Family Medicine with up-to-date medical and usage information about the EAI for the benefit of its patients. Exemplifying that purpose, the fax includes information about the EAI's regulatory status, active ingredient, and insurance coverage. *See* Compl. Ex. A. The lion's share of the text of the EAI announcement concerns detailed prescribing and usage information for the EAI, including how and where the EAI should be injected, whom it can be prescribed to, and its potential side effects and interactions with other diseases. *See* Exhibit A at 2. In short, the fax contains "bona fide medical information of interest" to recipients. *See Holmes,* 695 F. Supp. 2d at 851.

To the extent that the first page of the EAI announcement fax includes ordering information, any "incidental advertisement" in the faxes does not alter their primary purpose and "does not convert the entire communication into an advertisement." *See*

11

FCC Order at 25973–74; *e.g.*, *Janssen Pharm., Inc.*, 2013 WL 486207, at *6 (concluding that advertisement was merely incidental to informational message of faxes that "were clearly only useful to physicians who were prescribing Levaquin to patients on UnitedHealthcare PDL," and marketing logos appeared only in the margins, informational statement used "most of the space," and faxes included defendants' contact information). Likewise, any ancillary commercial benefit to Impax in sending this informational announcement does not alter its classification. *See Lutz Appellate Servs., Inc.*, 859 F. Supp. at 181 (finding that the fact that a recipient may apply for the job offered did not alter the informational nature of the fax). This informational announcement is not an "advertisement" within the definition of the TCPA, and Plaintiff's Complaint should therefore be dismissed.

## II. PLAINTIFF'S CLASS ALLEGATIONS SHOULD BE DISMISSED OR STRICKEN FROM THE COMPLAINT.

This Court should also dismiss or strike Plaintiff's class allegations because they are deficient as a matter of law.

A plaintiff who seeks to represent a purported class bears the burden of proving that class certification is appropriate under Federal Rule of Civil Procedure 23. *Rutstein v. Avis Rent–A–Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000). Deficient class allegations may be struck at the pleading stage. *McCrary v. Stifel, Nicolaus & Co.*, 687 F.3d 1052, 1059 (8th Cir. 2012) ("[C]lass claims that fail to meet the requirements of Rule 23 may be properly dismissed by granting a Rule 12(b)(6) motion."); *e.g.*, *Foxx v. Ocwen Loan Servicing, LLC*, No. 8:11-CV-1766-T-17EAK, 2012 WL 2048252, at *9–10

(M.D. Fla. June 6, 2012) (granting defendant's motion to dismiss class allegations based on plaintiff's failure to comply with local and federal rules' class action pleading requirements). "A plaintiff may not turn a lawsuit into a class action simply by designating it as a class action in the pleadings." 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.80[1] (3d ed. 2013). Accordingly, a motion to dismiss or strike class allegations is "an appropriate device to determine whether the case will proceed as a class action." *Wright v. Family Dollar*, No. 10-C-4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010) (granting motion to strike class allegations); *see also Kraetsch v. United Serv. Auto. Ass'n*, No. 4:14-CV-264-CEJ, 2015 WL 1457015, at *5 (E.D. Mo. Mar. 30, 2015) (granting motion to strike class claims); *Chilton Water Authority v. Shell Oil Co.*, No. CIV.A. 98-T-1452-N, 1999 WL 1628000, at *4 (M.D. Ala. 1999) (granting motion to strike class allegations).

> In this case, Plaintiff seeks to represent a purported nationwide class defined as:
>
> Any and all individuals and entities, who or which, from 2013 to the present, received one or more unsolicited advertisements via facsimile from Defendant.

Compl. ¶ 19. This proposed definition is facially defective for at least two reasons. *First*, Plaintiff is not a member of the proposed class because it did not receive any unsolicited fax advertisements from Impax. *Second*, the proposed class definition merely parrots the statutory requirements for a TCPA claim, and therefore creates an impermissible "fail-safe" class with no possibility of an adverse judgment against a purported class member.

## A. Plaintiff Lacks Standing to Represent the Proposed Class.

Plaintiff alleges that its putative class is comprised of individuals or entities who received one or more unsolicited advertisements via facsimile from Impax. Compl. ¶ 19. As explained *supra*, pp. 6–12, however, the medical announcement Plaintiff allegedly received from Impax was not an "advertisement" under the TCPA. *See* Exhibit A (identifying safety and usage information for the EAI). Because Plaintiff did not receive an "advertisement," it has not suffered the same alleged injury the purported class members allegedly suffered, and therefore lacks standing to represent them. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("We have repeatedly held that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal quotation marks omitted); *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) ("a claim cannot be asserted on behalf of a class unless at least one named Plaintiff has suffered the injury that gives rise to that claim").

Courts routinely scrutinize plaintiffs' standing to assert proposed class claims early in litigation and prior to certification. *See In re The Celotex Corp.*, 496 F. App'x 3, 5–6 (11th Cir. 2012) (affirming dismissal of complaint when plaintiff did not allege that it had the same disputed property damage claims, or interest, as the class it purported to represent); *see also Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, No. CIV. 13–2664 ADM/SER, 2014 WL 943224, at *10 (D. Minn. Mar. 11, 2014), *aff'd*, 797 F.3d 538 (8th Cir. 2015) (granting motion to dismiss claims prior to class certification); *Chin v. Gen. Mills, Inc.*, Civil No. 12–2150 (MJD/TNL), 2013 WL

2420455, at *3 (D. Minn. June 3, 2013) (granting motion to dismiss certain claims in a putative class action and noting that "other courts routinely dismiss claims in consumer class actions that attempt to seek relief relating to products that the named plaintiffs have not purchased"); *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (affirming dismissal and noting that "[w]here it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings."). Indeed, the Supreme Court has stated that "[i]n an era of frequent litigation, class actions, sweeping injunctions with prospective effect, and continuing jurisdiction to enforce judicial remedies, courts must be more careful to insist on the formal rules of standing, not less so." *Arizona Christian School Tuition Organization v. Winn*, 131 S. Ct. 1436, 1449 (2011).

This Court should take the same approach. Plaintiff did not receive an unsolicited "advertisement." Thus, it does not share a cause of action with the alleged class members, nor has Plaintiff suffered an injury consistent with the putative class members it seeks to represent. This Court should dismiss Plaintiff's class allegations.

**B. Plaintiff's Proposed Definition Is an Impermissible "Fail-Safe" Class.**

Plaintiff's proposed class definition is also improper because class membership is defined in terms of success on the merits rather than by reference to objective criteria (*i.e.*, class membership depends on whether the person has a valid claim).[3] This type of

---

[3] Courts address "fail-safe" class definitions under various provisions of Rule 23. *Lindsay Transmission*, 2013 WL 275568, at *4 (citing cases addressing the issue as one of failure to define a sufficiently identifiable class, a failure to meet the commonality and typicality requirements of Rule 23(a), or a failure to meet the predominance requirement of Rule 23(b)(3)).

15

alleged class is known as a "fail-safe" class because there is no possibility of an adverse judgment against a class member. *Alhassid v. Bank of Am., N.A.*, 307 F.R.D. 684, 694 (S.D. Fla. 2015) (holding that certification of fail-safe class is not proper). Numerous courts have concluded that fail-safe class definitions are improper because a class member either wins or, by virtue of losing, is not bound by the judgment because he or she is not a member of the class. *Lindsay Transmission, LLC v. Office Depot, Inc.*, No. 4:12-CV-221 CEJ, 2013 WL 275568, at *4 (E.D. Mo. Jan. 24, 2013); *see also Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012); *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011).

For example, in *Lindsay Transmission v. Office Depot, Inc.*, No. 4:12-CV-221, 2013 WL 275568, at *5 (E.D. Mo. Jan. 24, 2013), the court struck a class definition that was substantively identical to the definition Plaintiff proposes. There, the proposed class was defined as:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant (3) with respect to whom Defendant cannot provide evidence of prior express permission or invitation for the sending of such faxes, (4) with whom Defendant does not have an established business relationship and (5) which did not display a proper opt out notice.

*Id.* at *3. The court rejected the proposed class because it included only those persons who could establish a violation of the TCPA and therefore constituted a fail-safe class. *Id.* at *5; *see also Zarichny v. Complete Payment Recovery Svcs., Inc.*, 80 F. Supp. 3d 610, 624–25 (E.D. Pa. 2015) (granting motion to strike class allegations in TCPA case because proposed class definition would have resulted in a fail-safe class); *Boyer v. Diversified*

*Consultants, Inc.*, 306 F.R.D. 536, 539–40 (E.D. Mich. 2015) (granting motion to strike TCPA class allegations because the class was defined as a fail-safe class). This Court should strike Plaintiff's class allegations for the same reason.

## CONCLUSION

For these reasons, this Court should grant Impax's motion and dismiss the Complaint with prejudice.

Respectfully submitted this 27th day of March,

*/s/ S. Stewart Haskins II*
S. Stewart Haskins II (admitted *pro hac vice*)
Zachary A. McEntyre (admitted *pro hac vice*)
Anush Emelianova (admitted *pro hac vice*)
Attorneys for Defendants
**KING & SPALDING LLP**
1180 Peachtree Street, NE
Atlanta, GA 30309
Tel: (404) 572–4600
Fax: (404) 572–5100
shaskins@kslaw.com
zmcentyre@kslaw.com
aemelianova@kslaw.com


M. WARREN BUTLER (BUT021)
Attorney for Defendants
**Starnes Davis Florie LLP**
RSA Battle House Tower, 20th Floor
P. O. Box 1548
Mobile, AL 36633–1548
Phone: (251) 433–6049
Fax: (251) 433–5901
mwb@starneslaw.com

## CERTIFICATE OF SERVICE

      I do hereby certify that on the 27th day of March, 2017, I have served a copy of the foregoing pleading on counsel for all parties to this proceeding by CM/ECF and/or by mailing the same via United States Mail, properly addressed and first-class postage pre-paid, as follows:

    Diandra S. Debrosse-Zimmerman
    Zarzaur Mujumdar & Debrosse
    2332 2nd Avenue North
    Birmingham, Alabama 35203
    fuli@zarzaur.com

    James H. McFerrin
    McFerrin Law Firm, LLC
    265 Riverchase Parkway East
    Suite 202
    Birmingham, Alabama 35244
    jhmcferrin@bellsouth.net

                                              */s/ S. Stewart Haskins II*
                                              S. Stewart Haskins II