# Exhibit B

Case 3:16-cv-01289-AKK   Document 35-1   Filed 10/30/17   Page 2 of 12

FILED
 2016 Nov-30 PM 03:33
U.S. DISTRICT COURT
    N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **THE FLORENCE ENDOCRINE CLINIC, PLLC,** | ) ) ) | |
| Plaintiff, | ) ) | Civil Action Number **3:16-cv-1289-AKK** |
| vs. | ) ) | |
| **ARRIVA MEDICAL, LLC,** | ) ) ) | |
| Defendant. | ) | |

## **ORDER**

The Florence Endocrine Clinic, PLLC filed this lawsuit on behalf of itself and other similarly situated individuals against Arriva Medical, LLC, for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Doc. 1. Arriva moves to dismiss the complaint based on standing or, alternatively, for failure to state a claim based on its contention that the disputed facsimile transmissions were not "unsolicited advertisements" within the meaning of the TCPA. Doc. 10 at 2–3. For the reasons below, the motion is due to be granted.

### I.   Factual Background

Arriva, a medical products supplier, is an authorized Medicare provider of home testing supplies to persons with diabetes. Doc. 1 at 2. As part of its business model, Arriva solicits physician information from its customers, purportedly to streamline insurance approval of purchases. *Id.* at 3. Arriva then faxes an order

1

form to the physician to obtain authorization for the purchase and certification that the patient has a medical necessity for the item. *Id.* at 5. At issue here are four faxes Florence Endocrine received from Arriva asking for physician approval and authorization of a patient's purchase. *Id.* at 3. Florence Endocrine contends that these faxes are "unsolicited advertisements" under the TCPA. *Id.* at 5.

## II. Standard of Review

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a short and plain statement of the claim showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a). While notice pleading is not intended to require the plaintiff to specifically plead every element of a cause of action, "it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001)(internal citations omitted); *Seagood Trading Corp. v. Jerrico, Inc.,* 924 F.2d 1555 (11th Cir. 1991).

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(6) is permitted when a plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In a motion to dismiss, the factual allegations in the plaintiff's complaint are taken as true and "the court limits its consideration to the pleadings and exhibits attached thereto." *Grossman v. Nationsbank, N.A.*, 225

F.3d 1228, 1231 (11th Cir. 2000); *South Florida Water Mgmt Dis. v. Montalvo*, 84 F.3d 402, 406 (1996). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim is plausible where it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal for failure to state a claim, then, is appropriate where the plaintiff fails to state a claim that is "plausible on its face." *Id*. This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III.  Analysis

Congress enacted the TCPA in response to consumer "outrage[] over the proliferation of intrusive, nuisance telemarketing calls to their homes." *Mims v. Arrow Financial Services, LLC,* 132 S. Ct. 740, 745 (2012). Relevant here, the TCPA also prohibits sending "unsolicited advertisements" to fax machines unless (1) the sender and recipient have an established business relationship, (2) the recipient voluntarily made its fax number available through specified means, or (3) the advertisement contained a statutorily compliant notice. 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(4). The parties agree that the transactional relationship is between Arriva and patients of Florence Endocrine and that Arriva

did not obtain permission from Florence Endocrine prior to sending the faxes. *See, e.g.,* docs. 10 at 12; 25 at 13–14. Therefore, Arriva can only avoid liability if the faxes are not unsolicited advertisements or if, as it contends, Florence Endocrine has no standing to file this lawsuit.

*1. Whether the Florence Endocrine Clinic has standing to bring this lawsuit*

Federal courts are courts of limited jurisdiction and can only preside over claims for which they are authorized to hear. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Palmore v. United States*, 411 U.S. 389 (1973). Therefore, they are "obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 975 (11th Cir. 2005); 28 U.S.C. § 1331. Where a court lacks subject matter jurisdiction, "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *Morrison v. Allstate Indem. Co.,* 228 F.3d 1255 (11th Cir. 2000).

Standing is a jurisdictional requirement. *See discussion in Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103–104 (1998), *and Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990). To satisfy the Article III standing requirement, Florence Endocrine must allege that it has suffered an injury in fact, that the injury is "fairly traceable to the challenged conduct of the defendant," and that the injury is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 112 S. Ct. 2130, 2136 (1992). The last two factors are not in

dispute—Arriva admits that it sent the challenged faxes and concedes that a favorable judicial decision could redress the purported harm. *See generally* doc. 10. As to the first element, based on *Spoeko Inc. v. Robins,* 136 S. Ct. 1540 (2016), Arriva contends that Florence Endocrine has not "suffered a concrete particularized injury as a result of Arriva's purported TCPA violation. . . . [and that Florence Endocrine] alleges . . . a bare violation of the statute. . . ." Doc. 10 at 2. Indeed, in *Spokeo,* the Supreme Court reiterated that "an injury in fact must be both concrete *and* particularized . . . [and that] [a] 'concrete' injury must be '*de facto*'; that is, it must exist." 136 S. Ct. at 1548 (emphasis original). Based on this statement, Arriva argues that Florence Endocrine has not alleged facts to support the existence of a concrete injury.[1] The court disagrees.

Although Arriva is certainly correct that *Spokeo* made clear that a plaintiff must allege a concrete injury, doc. 10 at 2, Arriva ignores the other principle reiterated by the Court, i.e. that, "Congress may elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." 136 S. Ct. at 1549 (internal citations and quotations omitted). Indeed, "Congress has the power to define injuries and articulate chains of causation that will give rise to a

---

[1] Florence Endocrine's Motion for Leave to File Additional Authority, doc. 34, is **GRANTED.**

5

case or controversy where none existed before."[2] *Id.* Along those lines, here, under the TCPA, Congress has conferred upon individuals the freedom from unsolicited telemarketing calls and faxes, 47 U.S.C. § 227, and has also created a private right of action for violations of the statute, *id*. at §227(b)(3). Moreover, in the TCPA context, the Eleventh Circuit has described the concreteness of the injury as: the occupation of the fax line and the cost to the recipient of printing that transmission. *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S.,* 781 F.3d 1245, 1252 (11th Cir. 2015). As the court put it, "the TCPA's prohibition against sending unsolicited fax advertisements was intended to protect citizens from the loss of the use of their fax machines during the transmission of fax data." *Id.* Therefore, because Florence Endocrine has alleged that it received at least four unsolicited faxes from Arriva, *see* docs. 1 at 5; 1-1–1-4, it is evident that the transmission of these faxes occupied Florence Endocrine's telephone line and fax machine. This conduct "is among the injuries intended to be prevented by the statute and is sufficiently personal or particularized to [Florence Endocrine] as to provide standing." *Sarris*, 781 F.3d at 1252; *see also JWD Automotive, Inc. v. DJM*

---

[2] Arriva points to other district court decisions that impose a higher burden on the plaintiff alleging harm in a TCPA case in light of *Spokeo*. *See* doc. 10 at 9. These cases are not particularly helpful. Moreover, in the lone district court case from within this Circuit Arriva cites that addresses the injury-in-fact requirements of *Spokeo*, that case did not deal with the TCPA and the court reiterated the need for a concrete injury and found that the plaintiff had not demonstrated the existence of an injury-in-fact because he had not adequately alleged a violation of the statute. *Mejia v. Ocwen Loan Servicing, LLC*, 2016 WL 4587129 (S.D. Fla. Sept. 2, 2016).

*Advisory Group, LLC,* 2016 WL 6835986 (M.D. Fla. Nov. 21, 2016); *Family Medicine Pharmacy, LLC v. Trxade Group, Inc.*, 2016 WL 6573981 (S.D. Ala. Nov. 4, 2016). Accordingly, Florence Endocrine has alleged sufficient facts to establish Article III standing.

*2. Whether the relevant faxes are advertisements for the purposes of the TCPA*

The court turns next to whether the faxes are unsolicited advertisements.[3] Doc. 10 at 3. The TCPA defines an unsolicited advertisement as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5); *see also* 47 C.F.R. § 64.1200(f)(1). Arriva concedes that it did not have permission from Florence Endocrine to send the faxes. To get around the unsolicited nature of the faxes, Arriva contends that it targeted faxes to a specific doctor at the patient's request. This contention is unavailing because nothing in the TCPA allows a third party to provide consent for another party. Indeed, the cases Arriva cites to support this contention are not particularly instructive because they involve markedly different facts. *See, e.g., Sandusky Wellness Center, LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218 (6th Cir. 2015) (where information about plan-

---

[3] The court can consider these faxes because Florence Endocrine references them in the complaint, attaches them as exhibits, and they are "central to the plaintiff's claim." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993)).

7

preferred medications covered under a chiropractor's patient's health insurance was not considered to be an advertisement by a pharmacy); *Physicians Healthsource, Inc. v. Boehringer Ingelhein Pharms., Inc.,* 2015 WL 144728 (D. Conn. 2015) (finding a fax promoting free seminar for diagnosing sexual dysfunction was not an advertisement despite allegations the sender was developing treatments).

Although the faxes are unsolicited, whether they are advertisements depends on whether they were designed to promote Arriva goods, *see* 47 C.F.R. § 64.1200(f)(1), or whether, as Arriva contends, they were transactional messages designed to facilitate existing transactions between Arriva and its customers and/or informational communications designed to notify physicians of the particular medical products requested by their patients. Doc. 10 at 10. A review of the faxes shows that they consist of a cover letter that (1) identifies the particular patient at Florence Endocrine and the specific physician at the clinic treating the patient, (2) explains that the patient gave Arriva permission to contact the clinic, and (3) ends with a request for Florence Endocrine to complete the order form "in compliance with applicable laws and regulations" to approve the patient's purchase of the medical item, presumably so that insurance will cover the cost. *See generally* docs. 1-1–1-4; 25 at 14 (Florence Endocrine's contention that the court should overlook "the absence of a price" on the faxes because "the goods were intended to be paid

8

for . . . by insurance."). The order form in turn describes the medical product the patient has ordered, and asks the physician to identify the patient's diagnosis, the affected area, and verify the patient's need for the product. Docs. 1-1–1-4. In two of the faxes, Arriva asks the physician to choose from a group of two products the specific product that is more appropriate for the patient's needs, docs. 1-2 at 3 *and* 1-3 at 3, and to certify that the patient's medical records "support[] the medical necessity for the items [the physician has] prescribed," doc. 1-3 at 2.

Because there is nothing in the faxes regarding the purported quality of the products, the faxes will only qualify as unsolicited advertisements if they "advertis[e] the commercial availability. . ." of the products. 47 U.S.C. 227(a)(5). *See also Sandusky Wellness Center, LLC v. Medco Health Solutions, Inc.,* 788 F.3d 218, 223–224 (6th Cir. 2015) ("To be an [unsolicited advertisement], the fax must . . . have profit as an aim."). To support its contention that the faxes are advertisements, Florence Endocrine directs the court, in part, to *Elan Pharmaceutical Research Corp. v. Employers Ins. of Wausau*, where the Eleventh Circuit noted that "communications intended to induce the doctors to prescribe a pharmaceutical manufacturer's drugs for the doctors' patients would constitute 'advertising.' . . ." 144 F.3d 1372, 1378 n.11 (11th Cir. 1998). The reliance on *Elan* and the other district cases cited miss the mark because none of those cases involved situations where the sender of the fax used the fax to request information

to complete an order that a patient of the recipient clinic had already made. There is a difference between the patients in question here who had a relationship with Arriva, had ordered the medical product in question for their treatment from Arriva, and could only receive insurance coverage for the devices if their physician signed off on the purchase,[4] and the generic fax to a doctor's office from a pharmaceutical company or manufacturer touting a medication or a product. In the latter, it is evident that the sender is utilizing the faxes to encourage the recipient to prescribe the sender's products or medicine. In the scenario at issue here, however, the faxes were specific to a patient's transaction.

Ultimately, a plain reading of the faxes at issue demonstrates that they do not "advertis[e] the commercial availability or quality of any property, goods, or services," 47 C.F.R. § 64.1200(f)(1), because, as alleged in the complaint, Florence Endocrine patients had already purchased the products described. Moreover, there is nothing in the complaint to allege that Arriva intended the faxes to promote the

---

[4] *See* docs. 1-1–1-4 (Each fax begins with a similar variation of "Your patient ___ has requested that we send them a [specified medical product] for pain relief [or "to treat their lower back pain."]. They indicated that you are treating them for this condition [or "their pain"]"). Florence Endocrine contends in its complaint that "Arriva engages in aggressive direct marketing of its products to patients . . . [that it] will attempt to 'cross-sell' braces and other products . . . [and] tell[s] patients that the products will be covered by insurance . . . with little or no out-pocket expense to the patient." Doc. 1 at 3. Allegedly, some of "the products Arriva[] 'sell[s]' to patients are not medically necessary or appropriate. . . " *Id*. at 5. Such actions, if true, may perhaps create other legal issues for Arriva. However, as it relates to the TCPA, because Arriva has a relationship with the four patients at issue here and the faxes it sent were specific to those medical devices that the patients had ordered, and were not faxes promoting the commercial availability of Arriva products in an attempt to induce Florence Endocrine to prescribe them for other patients, the court finds that this complaint has failed to plead a valid TCPA claim.

10

products' commercial availability to Florence Endocrine doctors. In fact, Florence Endocrine alleges that Arriva's business model involves soliciting and aggressively cross-selling to *patients*, not to the clinic or its physicians. Doc. 1 at 3. Even the order forms do not advertise the availability of the products to Florence Endocrine, but rather operate as vehicles for patients to provide Medicare with proof that they have a medical need for the product they purchased. *See, e.g.,* docs. 1-3 at 2; 1-4 at 2 (page of the order form describing the item purchased and asking the physician to indicate which diagnosis best fit the patient).

Accordingly, because the court finds that the four faxes at issue in this case are not "unsolicited advertisements" as the term is defined by the TCPA, *see* 47 U.S.C. 227(a)(5), Florence Endocrine has failed to allege a violation of the TCPA and the motion to dismiss is due to be granted.

## CONCLUSION AND ORDER

For the foregoing reasons, the motion to dismiss, doc. 10, is **GRANTED**, and this case is **DISMISSED.** In light of this Order, the Motion to Certify Class, doc. 4, and the Motion to Stay, doc. 29, are **MOOT**.

**DONE** the 30th day of November, 2016.

                                                                            _____
                                                                            **ABDUL K. KALLON**
                                                                            UNITED STATES DISTRICT JUDGE